## JAMES v. TUBBS et al.

### No. 4230.

Court of Civil Appeals of Texas. Texarkana.
July 15, 1932.

Rehearing Denied Sept. 8, 1932.

Wynne & Wynne, of Longview, for plaintiff in error.

Bramlette & Meredith, of Longview, and Fuller & Leaverton, of Marfa, for defendants in error.

LEVY, J.

A. H. Tubbs and wife brought the suit against C. W. James in the purpose of having a decree, canceling a certain recorded written agreement which apparently obligated A. H. Tubbs and wife to execute to C. W. James an oil and gas lease, known as form No. 88, on fifty acres of land of the D. Sanches survey in Gregg county. It was alleged in the petition that the agreement was a cloud upon title and should be canceled because (1) "the signatures were secured through the artifice, fraud and overreaching of the defendant through his agent and without knowledge or consent of the plaintiffs or either of them," and (2) "said instrument was never delivered to the defendant or his agent and was taken away from the residence of A. H. Tubbs and wife contrary to their agreement," and (3) "that no consideration whatever was promised, paid or given."

J. K. Wadley intervened, adopting plaintiffs' pleading.

C. W. James answered by general denial, and by cross-action sought specific performance of the alleged lease agreement, or, in the alternative, damages.

The case was submitted to the jury on certain special issues, and they made answers thereto. A judgment was rendered in favor of the parties plaintiffs and intervener, canceling the instrument in suit, and that the defendant take nothing on his cross-action. The defendant C. W. James has timely prosecuted an appeal from the judgment.

It was shown that A. H. Tubbs owned the fifty acres of land in suit, and at one time lived on it with his family as a homestead. On July 2, 1931, C. W. James, acting through his agent, offered to lease the land for the production of oil, and orally agreed to make payment of $600. A. H. Tubbs and his wife assented to the proposal to lease the land upon the condition that the $600 be paid immediately in cash. Thereupon A. H. Tubbs and wife signed and acknowledged the instrument noted below in the purpose merely of evidencing in written memorandum the terms of oral agreement and with its delivery not to be before and in anywise until the contemplated act of payment "on the next day" of $600 cash was wholly performed. The instrument reads:

"Memorandum of Purchase and Sale of Oil and Gas Lease.

"For and in consideration of the covenants and agreements hereinafter set forth, A. H. Tubbs and his wife, Dell Tubbs, of Longview, Texas, hereinafter known as the sellers, whether one or more, agree to sell, grant and convey unto C. W. James, hereinafter known as buyers, whether one or more, a good and valid Oil and Gas Lease on a regular form 88 (Producers) Texas form for a term of ten years, and if a well be not commenced within one year buyer or lessee shall pay a rental of one dollar per acre per year in accordance with the terms of regular form of lease above mentioned, covering the following described lands located in Gregg County, State of Texas, to-wit: [Here follows description] * * * for the sum of Six Hundred Dollars ($600.00) subject, however, to the following terms and conditions:

"1. Sellers agree to attach Oil and Gas Lease (or conveyance) which has been duly signed and acknowledged according to law covering said above described lands, to a draft drawn upon the above buyers, in care of

Exchange National Bank of Tulsa, Oklahoma, in the sum of $600.00 Dollars, and to deposit same for collection with the First National Bank of Longview, Texas, immediately following the execution of this instrument.

"2. Sellers agree to furnish buyer with a complete abstract of title to the said above described lands down to the date of this agreement, showing good and valid title in sellers.

"3. Sellers agree that buyer shall have twenty days from receipt of said abstract by the buyer, at the collecting bank first above mentioned, in which to have title examined.

"4. Sellers shall be furnished with such exceptions to said title as may be found thereto by buyer or his attorneys, in writing, and sellers agree to forthwith remove such exceptions to the satisfaction of the buyers, but in the event of failure of sellers to clear said title to the satisfaction of the buyers within a reasonable length of time after notice of said exceptions, then in that event buyer shall have the right and privilege of engaging in the work of clearing up said title and removing such objections as may be required, and it is expressly understood and agreed that the time limit as provided for in paragraph 3 above written is hereby extended to provide such additional time as is necessary to perfect said title.

"5. In the event title is found finally to be unsatisfactory to buyer, it is expressly agreed and understood that buyer shall have the option of rejecting conveyance herein provided for, thereby rendering this agreement null and void and of no force and effect and buyer shall not be liable in damage to the sellers.

"6. Both the forwarding and collecting banks hereinbefore named are hereby appointed agents of both parties hereto and are instructed to observe and require the compliance with the terms and conditions of this agreement.

"7. Duplicate copy of this agreement must accompany draft and attachments above provided for, and both collecting and forwarding banks are instructed to re-forward draft and Oil and Gas Lease herein mentioned to such bank or bankers as buyer may designate, for final payment, and neither the bank forwarding the draft, the collecting bank, nor any to which papers have been reforwarded at the direction of buyers as herein authorized, nor the drawer hereof, shall have any right to demand the said draft nor of said papers attached thereto as above provided for prior to expiration of the time provided for in paragraph 4 above written.

"8. Sellers agree to accept the money on said draft in case same is paid within the time provided in paragraph 4 above written.

"9. It is understood and agreed that buyer shall pay the cost of executing this agreement.

"10. The consideration for the privileges extended to the buyer under the provisions of this contract is the sum of one ($1.00) Dollar, cash in hand paid to the seller, the receipt of which is hereby acknowledged."

The instrument bears date of January 2, 1931. At the same time the blank spaces in a regular printed lease in form No. 88 were filled out covering the fifty acres of land was signed by A. H. Tubbs and wife, but the blank acknowledgment was not filled out. Also the following draft was filled out and delivered to A. H. Tubbs:

"First National Bank.

"Longview, Texas, 1/2/1931

"Pay to the Order of A. H. Tubbs Six Hundred and No/100 Dollars (In consideration of the attached lease, mineral deed or conveyance)

"By ————

"Drawer.

"To C. W. James, Exchange National Bk. Tulsa, Oklahoma."

The memorandum of the agreement and the lease with the draft pinned to it were then placed on a table in the room and in the control and possession of A. H. Tubbs. A. H. Tubbs, as testified, was to continue and hold possession of the memorandum, and "on the next morning" was to have the lease acknowledged by him and his wife and the notary seal placed thereon, and then to deposit all the instruments in the First National Bank of Longview and to be immediately paid $600. According to the affirmative testimony of A. H. Tubbs, the memorandum was never intended to be delivered to C. W. James or his agent at that time, nor until and unless the $600 was actually paid on the next day, and that he never made delivery, or assented thereto. As further testified by A. H. Tubbs, "as Mr. Dorning laid the papers down (after looking over the acknowledgment) he said, 'Here is all your papers and you wait until I get back in the morning to have the seal put on them so that you can take them to the bank,' and he offered me a dollar. I told him my $600.00 was to be my pay, and I didn't receive it. He said the law required him to give the dollar and he gave me the dollar and went on out. He never came back the next morning nor sent me any word." It appears that in leaving the home of A. H. Tubbs the agent of C. W. James took the original executory agreement with him, and promptly filed it for record in the county clerk's office on "January 2, 1931, at one o'clock P. M." The agent appears to have understood there was complete delivery of the memorandum to be immediately effective. There is seeming conflict in the evidence as respects the delivery of the memorandum at the time the agent took the agreement. It appears that A. H.

Tubbs, who was shown to be nearly blind, did not know until the next day, January 3, 1931, that the memorandum was taken and placed of record. Immediately upon information of the recording of the instrument, he proceeded at once on January 3, 1931, to file this suit in the district court to have decree of cancellation as a cloud upon title.

Among other issues, which we regard as immaterial, the following issue was submitted to the jury: "No. 7. Did A. H. Tubbs and wife deliver to Dorning the instrument sought to be canceled with the intent and purpose to surrender control over such instrument to Dorning and to give effect and operation to it as a contract on the night it was prepared and signed?" Jury answer: "No."

Dorning, it was shown, was the agent acting for C. W. James. There is sufficient evidence to warrant the verdict of the jury.

■ The principal point presented for decision on appeal is that of whether or not in the situation shown judgment should have been rendered in favor of the plaintiff in error, C. W. James. It is believed that the contention of the plaintiff in error must be sustained that invalidity of the agreement cannot be predicated in the evidence upon the ground that fraud or deceit was practiced in obtaining the memorandum. Such conclusion is not legally warranted when all the circumstances are correctly considered. There is, however, evidence warranting the conclusion that the apparent written agreement, although containing the terms of a proposed contract, was not drawn up and signed in the purpose and intention of being ready for delivery and as constituting a mutual obligation to be immediately effective as passing present rights in the land and oil. There was not the intention at the time on the part of A. H. Tubbs and wife to make the apparent agreement ready for delivery and being handed to C. W. James with the intention of passing the present interest or title through lease of the land. The right of renunciation or repudiation by A. H. Tubbs and wife existed and was reserved until next day. The writing was not to be evidence of the actual terms of an agreement between the parties before or until the happening next day of the performance of the agreed condition of immediate payment in cash of the $600. The factual elements of delivery as well as intention to have the writing evidence an immediate and effective mutual contract became vital facts in the case. Delivery is legally regarded as a question of mutual intent and purpose of parties, and ordinarily one for the jury. Without the intention and purpose of delivery by A. H. Tubbs and wife, the apparent agreement never became operative and its obligation never commenced. It is only in case a writing is signed with the inten-

tion of presently and effectively evidencing the actual terms of an agreement between the parties when delivered that the agreement may be enforced, although the writing itself be not delivered. It is believed the finding of fact by the jury that there was not delivery made of the memorandum may not be set aside by this court in the light of the evidence. In this view it is concluded that the assignment of error should be overruled as not warranting reversal of the judgment.

The judgment is affirmed.